**GEORGE B. STRAYER v. R. DWIGHT JOHNSTON**

21 So. (2nd) 593          January Term, 1945
April 6, 1945          Division B

*McKay, Dixon & DeJarnette,* for appellant.

*Saunders & Patterson,* for appellee.

BROWN, J.:

This is an appeal by the defendant from a judgment in favor of the plaintiff for injuries received in a day-time collision of plaintiff's motorcycle with defendant's automobile while the latter was making a lefthand turn at a street intersection in the down town or business section of Ft. Lauderdale. The declaration alleged negligence on the part of the defendant in general terms, while the defendant plead the general issue and contributory negligence on the part of plaintiff. There was a conflict in the testimony upon the issues thus made.

Plaintiff testified that he, a motorcycle policeman, in response to an emergency call, was going North on Andrews Avenue, along the middle of the street at not over twenty five miles per hour, and was overtaking defendant, who was some forty five feet ahead of him when defendant began his lefthand turn; that defendant was driving on the righthand side of the street at a lesser rate of speed than plaintiff, and that the defendant approached near to or was just entering the intersection with Broward Boulevard, he began to make a left hand turn without having given any hand signal, and that as another car was in the way plaintiff could not turn to the right, so when he tried to avoid hitting defendant's car by also turning with him to the left and putting on and locking his rear brakes, but that he could not make a sufficiently sharp turn to avoid the collision and the right front side of his motorcycle hit the front left fender of defendant's car just as it had almost completed the left turn into Broward Boulevard and was in or near the Northwest corner of the intersection and on the West side of Andrews Avenue; that the point of impact was about forty feet from the place where defendant began to make his left hand turn. The resulting collision caused the breaking of plaintiff's left arm near the shoulder and the dislocation of his shoulder, also some abrasions on his knees and elbows. The injuries to plaintiff's left arm and shoulder were serious, requiring hospitalization and

two operations and causing permanent impairment of the use of his left arm. Plaintiff also testified that, as he was traveling North on Andrews Avenue, he blew his horn, and also had blinking red lights on the front of his motorcycle.

On cross examination plaintiff testified that he had applied his front wheel brakes only slightly; that the front wheel brakes were defective in that they needed adjusting, but that in any event it is dangerous to make full application of front wheel brakes on a motorcycle, as it is liable to go end over end with the driver. He also testified that he was about forty five feet behind defendant's car when it began turning to the left, and that he had gone about forty five feet before he began to apply the brakes; that a certain amount of "reaction time" is required before acting; that he traveled about forty feet from the time he applied the brakes before the collision took place.

There were several witnesses who testified in the case, but their testimony was rather indefinite. One of defendant's witnesses testified that he saw the motorcycle about a block away and that he "guessed" it was going thirty five miles per hour.

The defendant, a man eighty years of age, a real estate salesman, testified that he was on his way home; that he was traveling at not over fifteen miles per hour in the normal line of north bound traffic, well on the right hand side of Andrews Avenue; that he did not see or hear plaintiff approaching, and did not look into his rear view mirror; that he was watching the traffic ahead. He also testified that he gave a hand signal, though not a long one; that he put out his arm as he made the turn, but quickly took it in again because he saw several people step off the side walk, crossing the street, and he put both hands on the wheel as he was getting ready to make the turn; that when his car was hit it was a little to the West of the center line of Andrews Avenue and North of the center of Broward Boulevard; that he didn't know the motorcycle was coming until his car was struck on the hub of the left front wheel. He said he did not hear any horn, and the first intimation he had of the motorcycle was when he heard the brakes put on it, it seemed to him about two feet back of his

left rear wheel; that he then put on his brakes, and in a split second the motorcycle hit the hub of his car and shoved it six to ten feet, so that his car was headed North up Andrews Avenue some ten feet before it stopped. That he did not wear glasses when driving and had no difficulty with his hearing.

At plaintiff's request, the court charged the jury that "chapter 20578, Laws of Florida, 1941, provides in part as follows:" Quoting in full all of Section 4 of that Act except subsection or paragraph "(a)"; also all of Section 37 except paragraph "(c)"; also all of Sections 38 and 39. The title of this Act begins with these words: "An Act regulating traffic on highways and defining certain violations in the use and operation of vehicles;" etc. This Act contains 71 sections, and appears to have been included practically verbatim in Florida Statutes 1941, as Chapter 317. That part of the court's charge quoting paragraphs "(a)" and "(b)" of Section 37 of the Act (appearing as Section 317.37 of F.S. 1941) reads as follows:

"Section 37. *When signal required.* (a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

"(b) A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

When this quoted portion of the court's charge is considered in connection with the other Sections of the Act above referred to, which were also given in the court's charge, the jury were in effect instructed that the law required the defendant to give a signal by extending his hand and arm horizontally (Section 39) "continuously during not less than 100 feet traveled before turning."

The court having charged that that Section of the statute was applicable law in this case, then clearly the jury must have been compelled to find on this evidence that the defendant was guilty of negligence.

But counsel for plaintiff below, and the learned trial judge also, inadvertently erred in their view that the sections of the statute referred to were applicable in this case. Those sections relate to motor vehicles operated outside the corporate limits of an incorporated city. Court and counsel overlooked Section 4 of Chapter 20578, which reads:

"Section 4. Obedience to and Effect of Traffic (a·) Provisions of Act Referring to Vehicles upon the Highways—Exceptions. The provisions of this Act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways outside of municipalities except:

"1. Where a different place is specifically referred to in a given section.

"2. The provisions of Article IV and V shall apply upon highways and elsewhere throughout the State."

The provisions of Article IV and V have no application or significance here.

The requirement of Sections 37 and 39 of the Act to the effect that a hand and arm signal should be given for a distance of 100 feet before making a turn might well be reasonable as applied to the operation of motor vehicles out on the highways beyond municipal limits, but it would hardly be reasonable or practicable in incorporated towns and cities, especially in the business districts of such cities. This fact was recognized by Section 4 of the statute.

Counsel for appellee contends that the giving of the charge to the jury above discussed was harmless error. On the evidence in this case, we cannot agree with this contention. To do so, we would have to indulge in mere conjecture. Our view is that the giving of this charge might well have influenced the jury in reaching the verdict which they rendered; that it was therefore prejudicial and reversible error.

Reversed and remanded.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.